UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL CASE NO. 21-749-TJK** |
| | : | |
| v. | : | |
| | : | |
| **NICHOLAS JOHNNY OROZCO,** | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MOTION FOR A DOWNWARD DEPARTURE
AND MEMORANDUM IN AID OF SENTENCING**

For more than two years, Nicholas Orozco actively participated in a conspiracy to defraud Apple. He joined the conspiracy in 2017 while he was working for an Apple Authorized Service Provider ("AASP"), i.e., a business officially sanctioned by Apple to accept iPhones for warranty repair/replacement. Eventually Orozco co-founded his own AASP. Instead of ceasing his criminal conduct at that point, he doubled down by continuing to send inauthentic iPhones to Apple. Over the course of the conspiracy, he submitted more than 1,000 inauthentic iPhones. He used legitimate customers' names on some of the submissions to keep Apple from knowing that the phones were being turned in by Haotian Sun. About six months after Sun and other co-conspirators were arrested, the government executed search warrants at Orozco's home and business. He started cooperating immediately and ultimately pleaded guilty to one count of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371. He also testified at Sun's trial. Based on the substantial assistance that he provided, the government requests that the Court reduce his final offense level from 17 to 9 pursuant to Guidelines § 5K1.1, resulting in a final guidelines range of 4 to 10 months. Consistent with that Guideline and the factors set forth in 18 U.S.C. § 3553(a), the government recommends that the Court sentence Orozco to six months' imprisonment followed by three years of supervised release. Such a sentence would be sufficient but not greater than necessary to accomplish the purposes of sentencing.

**FACTUAL BACKGROUND**

I.     **OROZCO'S UPBRINGING AND WORK HISTORY**

Orozco grew up in a loving household devoid of any abuse. PSR ¶ 79-80. He is close with his sister and parents but acknowledged struggling when his mom and dad separated during his senior year of high school. PSR ¶ 79. He graduated in the top ten percent of his high school class and then attended the College of William and Mary, where he was a member of the men's soccer team. *See* PSR ¶ 98; William and Mary 2010 Men's Soccer Roster, Nick Orozco Biography, available at https://tribeathletics.com/sports/mens-soccer/roster/nick-orozco/5417 (last visited Oct. 17, 2024). Orozco majored in International Relations but is approximately 10 credits shy of earning his degree. He left school to help care for a loved one who was experiencing health issues. PSR ¶ 97.

Orozco's employment history includes working as a server at a steakhouse, an attendant at a car wash, an advertising sales associate, and a part-time childcare associate. *See* PSR ¶ 99a-99e. In 2012, he began working for an Apple Authorized Service Provider in Baltimore. While he was working at that store, he oversaw all repairs, set procedures, and ensured that the store complied with Apple's guidelines. Trial Tr. 56:4-21.[1] In 2015, he moved to Williamsburg to start a franchise of that AASP. Trial Tr. 56:4-10; 24-25. In that capacity, he oversaw the AASP's sales and service operations. Trial Tr. 56:24-57:3. In 2019, the franchise closed and Orzoco co-founded his own Apple Authorized Service Provider at the same location. *See* PSR ¶ 99g-99i.

---

[1] All trial transcript citations are to Orozco's testimony on the morning of February 15, 2024, in *United States v. Haotian Sun and Pengfei Xue*, 21-CR-646.

2

## II. OROZCO'S INVOLVEMENT IN CONSPIRACY TO DEFRAUD APPLE

Wen Jin Gao, Haotian Sun, and other conspirators returned inauthentic iPhones to Apple in one of three ways. They shipped phones directly to Apple via UPS; took phones to Apple retail stores, such as the Apple Store in Georgetown; and brought phones to Apple Authorized Service Providers, which were responsible for repairing the phones or sending them to Apple for repair or replacement. *See* PSR ¶ 16-20.

Through his involvement with the Apple Authorized Service Providers, Orozco was able to help facilitate the fraud scheme that Sun and others undertook. He received cash and PayPal payments from Sun for his work in the conspiracy. *See* PSR ¶ 38-40; Trial Tr. 66:6-67:1. He also received shipments of inauthentic iPhones directly from Hong Kong. *See* PSR ¶ 36-37; Trial Tr. 67:18-25 ("Late in our interactions with Mr. Sun we did have several shipments (of iPhones from Hong Kong) come through. That was more or less to speed things up. And there were times when Jack (Sun) couldn't make it down to the store or Uncle Li (Sun's subordinate) couldn't make it down to the store."). He also submitted Sun's phones to Apple using real customers' names "to get around Apple's system so that they would repair those devices." Trial Tr. 90:1-16.

In March 2020, months after Sun was arrested, Orozco emailed Sun, "Just wanted to touch base and see if you had any iPhones that need repair? I lost your cell number and was hoping you might have some you can send our way for repair. Let me know either way, thanks!" PSR ¶ 35.

## III. SEARCH WARRANT AND OROZCO'S COOPERATION

In June 2020, about six months after Sun was arrested, the government executed search warrants at Orozco's residence and his business. Orozco began cooperating with the government immediately. He ultimately pleaded guilty to one count of conspiracy to commit mail fraud, in

3

violation of 18 U.S.C. § 371, and testified about his criminal conduct and role in the conspiracy at Sun's trial.

IV.  **SENTENCING GUIDELINES**

The presentence investigation report properly applied the following guidelines provisions:

| | | |
|---|---|---|
| USSG §2X1.1/2B1.1(a)(2) | Base Offense Level | 6 |
| USSG §2B1.1(b)(1)(G) | Loss of more than $250,000[2] | 12 |
| USSG §2B1.1(b)(10)(B) | Substantial part of scheme committed outside U.S. | 2 |
| USSG §3E1.1 | Acceptance of Responsibility | -3 |
| | Total: | 17 |

PSR ¶ 56-68.

Orozco has one criminal history point based on a 2018 DWI conviction. He received a six-month sentence, but most of it was suspended so he only had to serve 15 days. *See* PSR ¶ 71. He also was arrested for DWI in 2015 but did not receive any criminal history points for that arrest. PSR ¶ 70. Orozco told the PSR writer that, at the time of his first arrest, he was consuming seven to ten beers a day, two to three times a week. PSR ¶ 94. He said he stopped drinking alcohol in 2019 and noted that he completed the Virginia Alcohol Safety Action Plan, an eight-week outpatient program, in 2018 or 2019. PSR ¶ 94.

---

[2] Although Orozco admitted to causing an intended loss of more than $600,000, the government independently estimated the intended loss to be $508,800 based on information available to the government separate and apart from what Orozco provided during his debriefing session. Accordingly, consistent with USSG § 1B1.8(a) and the parties' plea agreement, the government requests that, in accordance with the final PSR, the Court increase the base offense level by 12 levels, pursuant to USSG § 2B1.1(b)(1)(G) (loss of more than $250,000), and not by 14 levels pursuant to USSG § 2B1.1(b)(1)(H) (loss of more than $550,000). *See* ECF No. 9 at 3 n.1, and 10. (The PSR contains a non-material typographical error in ¶ 59, referring to $350,000 as the breakpoint in USSG § 2B1.1(b)(1)(G) while the correct amount is $250,000.)

Even though he committed the instant offense while he was on probation for his DWI conviction—which would have subjected him to an additional two criminal history "status points" at the time that he entered his guilty plea—in 2023, the U.S. Sentencing Commission enacted Amendment 821, which modified § 4A1.1 to only award one additional criminal history point for committing an offense while serving a criminal justice sentence to defendants who already had received seven or more criminal history points. As a result, even though the parties believed Orozco would be in Criminal History Category II at the time of sentencing, he is in Criminal History Category I. His recommended guidelines range at level 17 and CHC I is 24 to 30 months. PSR ¶ 108. Prior to Amendment 821, his recommended guidelines range at that same offense level would have been 27 to 33 months. *See* ECF No. 9 at 4.

V.   **DOWNWARD DEPARTURE UNDER SECTION 5K1.1 OF THE GUIDELINES**

The government seeks a downward departure under Section 5K1.1 of the Guidelines based on Orozco's substantial assistance in the investigation and prosecution of others, in particular, Haotian Sun. Orozco started cooperating immediately after law enforcement agents executed search warrants at his residence and business. He provided helpful information and traveled to Washington, D.C., multiple times in connection with Sun's trial, where he was one of three cooperators who provided the jury with an inside look at how the conspiracy operated. After fully factoring in Orozco's assistance, the government recommends an eight-level departure from offense level 17 to offense level 9, which would result in a recommended range of 4 to 10 months. The resulting range is in Zone B of the Sentencing Table. The Guidelines note that a sentence of probation is authorized—though not required—in Zone B if a court imposes a condition or combination of conditions requiring a period of community confinement, home detention, or

5

intermittent confinement sufficient to satisfy the minimum term of imprisonment specified in the guideline range. *See* USSG § 5B1.1(a)(2). The recommended fine at offense level 9 is $2,000 to $20,000. USSG § 5E1.2.

## ARGUMENT

### I. THE 18 U.S.C. § 3553(A) FACTORS SUPPORT A SENTENCE OF SIX MONTHS OF INCARCERATION

The Court must impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational treatment. 18 U.S.C. § 3553(a)(2). The Court also must consider the history and characteristics of the defendant, the sentencing range under the guidelines, and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(1)-(7).

#### A. The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense

By actively participating in the conspiracy, Orozco made it far easier for Sun and others to successfully defraud Apple out of genuine iPhones. By working together, the conspirators defrauded Apple out of far more phones than they could have if they each had acted alone, rendering their conduct particularly serious. Moreover, Orozco repeatedly aided conspirators in their efforts to defraud Apple, the very company with whom he was supposed to be an ally. Orozco did not just return phones for Sun; he tried to conceal Sun's identity from Apple by using other customers' names on some of Sun's returns. Orozco also received shipments of inauthentic iPhones directly from Hong Kong to allow the conspiracy to operate more efficiently. Accordingly,

6

his conduct, which extended over a lengthy period, was serious and warrants a sentence of incarceration.

        **B.**        **The Need to Deter the Defendant and Others from This Type of Criminal Conduct and to Protect the Public from Further Crimes of the Defendant**

Absent Orozco's cooperation, the government would ask for a significantly higher sentence. With respect to specific deterrence, it is the government's hope that Orozco has been specifically deterred from engaging in additional criminal conduct. He certainly did everything the government asked him to do as a cooperator and took steps to right the wrongs that he committed. Thus, recidivism does not appear to be a driving concern. However, a prison sentence is warranted to deter other would-be fraudsters from embarking on the journey that Orozco took. Such individuals show know that if they participate in a conspiracy that makes committing the crime far easier than it would have been but for their involvement, there will be serious consequences at the end of the day, even if they try to minimize the damage that they committed by cooperating with the government.

        **C.**        **The History and Circumstances of the Defendant**

Like most defendants, Orozco's history and circumstances include positive and troubling traits. He is intelligent and hard-working. He also is a caring son who is close with his parents and his sister. Moreover, once he was confronted with his criminal behavior, he immediately cooperated with the government and did what he could to atone for his conduct. During his cooperation, he presented himself as an eminently likable person who possesses the skills to succeed at whatever he chooses to do in life. Unfortunately, however, Orozco repeatedly decided to engage in criminal conduct, going so far as to use other customers' names on returns to conceal

7

Sun's identity from Apple. The use of others' names could form the basis of an Aggravated Identity Theft conviction, under 18 U.S.C. § 1028A, which would have carried a two-year mandatory sentence. Accordingly, notwithstanding Orozco's positive traits—of which there are many—and the fact that the government is recommending a departure that would result in a Zone B guideline range, his conduct in this case warrants a six-month prison sentence.

### D. The Need to Avoid Unwarranted Sentencing Disparities

The following table consists of sentences imposed in similar cases. Notably, only Haotian Sun and Pengfei Xue chose to go to trial. Like Orozco, the other defendants accepted responsibility. The bulk of this information was submitted as part of the government's sentencing memorandum in *United States v. Zhiwei Liao*, 19-CR-4407-1 (S.D. Cal.), ECF No. 691.

| Defendant & Sentence Imposed (Any departure under USSG § 5K1.1, forfeiture, and/or restitution paid) | Offense of Conviction, Number of Counterfeit iPhones & Loss |
|---|---|
| **Ranshen Lin, 21-CR-408 (D.D.C.)** **21 months in custody** -Received 4-level departure under 5K1.1 -Criminal History included two prior iPhone fraud scheme convictions for which he never served any time in prison | Conspiracy to commit mail fraud (18 U.S.C. § 371) |
| **Haotian Sun, 21-CR-646 (D.D.C.)** **57 months in custody** -Two-level aggravating role adjustment -No acceptance of responsibility credit / cooperation | Conspiracy to commit mail fraud (18 U.S.C. § 1349) and mail fraud with personal responsibility for an actual loss of more than $1.5 million |
| **Pengfei Xue, 21-CR-646 (D.D.C.)** **54 months in custody** -Two-level aggravating role adjustment -No acceptance of responsibility credit / cooperation | Conspiracy to commit mail fraud (18 U.S.C. § 1349) and multiple counts of Mail Fraud with joint responsibility for an actual loss of more than $1.5 million |

| Defendant & Sentence Imposed (Any departure under USSG § 5K1.1, forfeiture, and/or restitution paid) | Offense of Conviction, Number of Counterfeit iPhones & Loss |
|---|---|
| **Zhiwei Liao, 19-CR-4407 (1) (S.D. Cal.)** **51 months in custody** -Agreed to forfeiture of two parcels of real property estimated to be worth $2.2 million -Agreed to forfeiture of $120,380 cash -Four-level aggravating role adjustment | Conspiracy to traffic in counterfeit goods - 10,000 iPhones with loss of $6.1 million |
| **Zhimin Liao, 19-CR-4407(2) (S.D. Cal.)** **41 months in custody** -Agreed to forfeiture of three parcels of real property, whose combined value is estimated to be $2.8 million -Agreed to forfeiture of $114,321 cash -Agreed to 2-level aggravating role adjustment | Conspiracy to traffic in counterfeit goods - 10,000 iPhones with loss of $6.1 million |
| **Zhiting Liao, 19-CR-4407(3) (S.D. Cal.)** **41 months in custody** -Agreed to forfeiture of real property estimated to be worth $826,659 -Agreed to forfeiture of $22,320 cash -Agreed to 2-level aggravating role adjustment | Conspiracy to traffic in counterfeit goods - 10,000 iPhones with loss of $6.1 million |
| **Xiaomin Zhong, 19-CR-4407 (4) (S.D. Cal.)** | Fugitive Residing in China |
| **Phillip Pak, 19-CR-4407 (5) (S.D. Cal.)** **18 months in custody** -1-level departure under 5K1.1; -Paid $40,000 restitution prior to sentencing | Conspiracy to traffic in counterfeit goods – 1,718 iPhones with loss of $1,087,226 |

| Defendant & Sentence Imposed (Any departure under USSG § 5K1.1, forfeiture, and/or restitution paid) | Offense of Conviction, Number of Counterfeit iPhones & Loss |
|---|---|
| **Dao Trieu La, 19-CR-4407 (6) (S.D. Cal.)**<br>**3 years' probation**<br>-Agreed to forfeiture of two parcels of real property estimated to be worth $2.3 million<br>-Agreed to forfeiture of $120,370 cash | One substantive count of wire fraud – loss of $39,589 |
| **Mengmeng Zhang, 19-CR-4407 (7) (S.D. Cal.)**<br>**3 years' probation**<br>-Agreed to forfeiture of real property estimated to be worth $826,000<br>-Agreed to forfeiture of $22,320 cash | One substantive count of mail fraud – loss of $9,500 |
| **Tam Thi Minh Nguyen, 19-CR-4407 (8) (S.D. Cal.)**<br>**3 years' probation**<br>-Agreed to forfeiture of three parcels of real property estimated to be worth a total of $2.8 million<br>-Agreed to forfeiture of $114,321 cash | One substantive count of mail fraud – loss of $9,500 |
| **Deedee Zhu, 19-CR-4407 (9) (S.D. Cal.)**<br>**15 months in custody**<br>-2-level departure under 5K1.1<br>-Paid $40,000 restitution prior to sentencing | Conspiracy to traffic in counterfeit goods – 1,236 iPhones with loss of $774,741 |
| **Danny Tran Chan, 19-CR-4407 (10) (S.D. Cal.)**<br>**3 years' probation**<br>-5-level departure under 5K1.1<br>-Minor role<br>-No restitution paid yet | Conspiracy to traffic in counterfeit goods – 841 iPhones with loss of $531,067 |

| Defendant & Sentence Imposed (Any departure under USSG § 5K1.1, forfeiture, and/or restitution paid) | Offense of Conviction, Number of Counterfeit iPhones & Loss |
|---|---|
| **Charley Hsu, 19-CR-4407 (11) (S.D. Cal.)** **Time-served (22 months)** -3-level departure under 5K1.1 -Minor role -No restitution paid | Conspiracy to traffic in counterfeit goods – 1,777 iPhones with loss of $1,151,375 |
| **Jiaye Jiang, 19-CR-4407 (12) (S.D. Cal.)** **3 years' probation** -2-level departure under 5K1.1; -Minor role -Paid $50,000 in restitution prior to sentencing) | Conspiracy to traffic in counterfeit goods – 219 counterfeit iPhones with a loss of $135,185 |
| **Hyo Weon Yang, 19-CR-4407 (13) (S.D. Cal.)** **1 year and 1 day in custody** -1-level departure under 5K1.1; -Minor role -Paid $40,000 in restitution after sentence imposed | Conspiracy to traffic in counterfeit goods – 484 iPhones with loss of $300,964 |
| **Quan Jiang –19-CR-167 (D. Or.)** **37 months in custody** | Trafficking counterfeit goods. Defendant admitted that, from 2015 through 2017, he smuggled at least 2,000 counterfeit iPhones resulting in loss of $1.2 million. Defendant managed other conspirators as part of the scheme. Govt. recommended variance based on defendant's provision of information during proffer sessions, withdrawal of claims to forfeiture of Mercedes-Benz and prepayment of $200,000 in restitution. |

| Defendant & Sentence Imposed (Any departure under USSG § 5K1.1, forfeiture, and/or restitution paid) | Offense of Conviction, Number of Counterfeit iPhones & Loss |
|---|---|
| **Haiwei Zhong, 17-CR-115 (D. Utah)** **33 months in custody** | Mail Fraud and False Statements. Defendant admitted that, from early 2016 through January 2017, he acquired 570 new iPhones through submission of more than 1,000 counterfeit iPhones resulting in loss of $458,262. No aggravating role adjustment recommended by the Government or imposed by the Court. |
| **Haiteng Wu, 20-CR-80-EGS (D.D.C.)** **Time-served (26 months)** -Defendant assisted government in selling two parcels of real property and a car that he agreed to forfeit. -6-month *Smith* variance -3-level Aggravating Role Adjustment | Conspiracy to Commit Mail Fraud (18 U.S.C. § 371). Wu admitted that, for approximately 3.5 years, he and conspirators caused more than 2,300 inauthentic phones to be submitted to Apple causing an actual loss of $987,000. He also admitted recruiting others, including his wife, to participate in the scheme. |
| **Jiahong Cai, 20-CR-81-EGS (D.D.C.)** **Time-served (approx. 5 months)** -2-level minor role adjustment -Agreed to Stipulated Judicial Removal Order | Conspiracy to Commit Mail Fraud (18 U.S.C. § 371). The intended loss for Cai (Wu's wife) was $30,600 and the actual loss was $23,400. |
| **Teang Liu, 21-CR-1-EGS (D.D.C)** **12 months and 1 day** -4-level departure under 5K1.1 -6-month *Smith* variance -Prepaid $57,570 forfeiture money judgment | Conspiracy to Commit Mail Fraud (18 U.S.C. § 371). Liu admitted that more than 1,099 inauthentic phones were submitted to Apple, causing an actual loss of $577,800. Defendant was recruited by Wu. |

The government submits that sentencing Orozco to six months' imprisonment would not lead to an unwarranted sentencing disparity with the above defendants.

## VI. RESTITUTION AND FORFEITURE

As part of his plea agreement, Orozco agreed to pay restitution in the amount of $241,800. He also agreed to the entry of a forfeiture money judgment in the amount of $5,884. *See* ECF No. 9 at 10-11; PSR ¶ 112,

## CONCLUSION

The government respectfully requests that the Court sentence Nicholas Orozco to six months of incarceration followed by three years of supervised release.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By: */s/ Kondi J. Kleinman*
Kondi J. Kleinman
California Bar No. 241277
Assistant United States Attorney
Fraud, Public Corruption & Civil Rights Section
601 D Street, N.W. | Washington, D.C. 20530
(202) 252 6887 | Kondi.Kleinman2@usdoj.gov

Ryan K.J. Dickey
D.C. Bar No. 982536
Senior Counsel
Computer Crime & Intellectual Property Section
1301 New York Ave, N.W. | Washington, D.C. 20530
(202) 616-1509 | Ryan.Dickey@usdoj.gov